

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| William Marshall | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 08 C 259 |
| City of Chicago, et al. | ) ) ) | |
| Defendants. | ) | |
| | | |
| Steven Wells, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 08 C 598 |
| City of Chicago, et al., | ) ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Just after it had completed the attached memorandum order ("Order") in Scott v. City of Chicago, et al., 07 C 3684, for issuance today, this Court received in chambers the courtesy copies of identical "Certification of Indemnification" forms in each of the above-captioned cases. Just as was true in Scott, those undertakings fall short as potential predicates for mooting the plaintiffs' 42 U.S.C. § 1983 ("Section 1983") claims against the City of Chicago ("City").

This is more than a matter of mere semantics. What City's counsel appear to have forgotten is that plaintiffs' claims against City, if and to the extent that they overcome the hurdle

established by <u>Monell v. Dep't of Soc. Servs. of City of N.Y.</u>, 436 U.S. 658 (1978), establish direct liability for an independent constitutional deprivation by that municipality. And that in turn, under <u>Carey v. Piphus</u>, 435 U.S. 247 (1978), would create a separate liability on City's part for nominal damages ("not to exceed $1").

By contrast, City's undertakings in its not-fully-thought-through Certifications of Indemnification confirm only its vicarious responsibility, rather than addressing its potential direct liability for putative constitutional violations. Hence the need for the added undertaking that is referred to in paragraph 3 of the Order.[1]

In effect, the situation that is created by a municipal undertaking that includes the added components set out in <u>Scott</u> (but that is not satisfied by the present Certifications of Indemnification) parallels that created by an offer of judgment under Fed.R.Civ.P. 68 that encompasses the maximum amount that a plaintiff could recover through litigation. That kind of offer eliminates any Article III case or controversy, rendering the plaintiff's claim moot (see, e.g., <u>Ambalu v. Rosenblatt</u>, 194 F.R.D.451, 452-53 (E.D.N.Y. 2000)). This analysis is one as to which our Court of Appeals has left no doubt -- as it said in

---

[1] Paragraph 1 of the Order is self-explanatory, while Paragraph 2 is needed to confirm the full extent of both the vicarious and the direct responsibilities on City's part.

2

<u>Rand v. Monsanto Co.</u>, 926 F.2d 596, 597-98 (7th Cir. 1991), citing cases in accord from other circuits:

> After the district court refused to allow Rand to represent the other purchasers (1,600 plus an unknown number dealing in street name), Monsanto offered $1,135, the full amount by which answers to interrogatories assert that Rand was injured, plus the costs of the suit. See Fed.R.Civ.P. 68. When Rand refused the offer, the district court properly entered judgment against him. 130 F.R.D. 87 (N.D.Ill. 1990). Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate. <u>Alliance to End Repression v. Chicago</u>, 820 F.2d 873 (7th Cir. 1987), and a plaintiff who refuses to acknowledge this loses outright, under Fed.R.Civ.P. 12(b)(1), because he has no remaining stake.

                                                        */s/ Milton I. Shadur*
                                                        Milton I. Shadur
                                                        Senior United States District Judge

May 8, 2008